RECEIVED
USDC CLERK, CHARLESTON, S

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

2006 AUG 25  P 2· 08

| | |
|---|---|
| Richard F. Whelchel, II, ) <br> 182757, ) <br> ) <br>      Petitioner, ) <br> ) <br>     -versus- ) <br> ) <br> E. Richard Bazzle, Warden of ) <br> Perry Corr. Institution; and, ) <br> Henry McMaster, Attorney ) <br> General for South Carolina, ) <br> ) <br>     Respondents. ) | C. A. No. 2:04-2061-23AJ <br><br><br><br> **REPORT AND RECOMMENDATION** |

This habeas corpus petition under 28 U.S.C. § 2254 filed April 28, 2005, by a state prisoner proceeding with counsel is before the undersigned United States Magistrate Judge for a report and recommendation on the respondents' summary judgment motion filed on October 29, 2004.  28 U.S.C. § 636(b).

## PROCEDURAL HISTORY

The petitioner, Richard F. Whelchel, II, is currently incarcerated in the Perry Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court of Cherokee County. Petitioner was indicted by a Cherokee grand jury in June of 1991 for murder. (App. p. 716).  He was also indicted, in September of 1991, for armed robbery. (App. p. 717).  R. Scott Davis, Esquire, represented Petitioner on the charges.  A jury trial was held November 19-21, 1991, before the Honorable James B. Stephen.  The

jury convicted Petitioner as charged. (App. p. 541). The judge sentenced Petitioner to life imprisonment for murder, and twenty-five (25) years, concurrent, for armed robbery. (App. p. 552). Petitioner filed a timely notice of intent to appeal.

Lesley M. Coggiola, Assistant Appellate Defender of the South Carolina Office of Appellate Defense, represented Petitioner on appeal. Counsel filed a Final Brief of Appellant in the Supreme Court of South Carolina on January 11, 1993, and raised the following issue:

> Whether the solicitor's use of peremptory challenges violated the equal protection clause and <u>Batson v. Kentucky</u>?

(App. p. 827).

The State filed its Final Brief of Respondent on January 11, 1993. (Copy of Initial Brief in App. at pp. 838-854). On January 12, 1993, appellate counsel filed the Final Reply Brief. (Copy of Initial Reply Brief in App. at pp. 858-863). The Court affirmed the convictions on August 5, 1993. <u>State v. Whelchel</u>, Memorandum Opinion No. 93-MO-247 (S.C.Sup.Ct. filed August 5, 1993). The Court issued the remittitur to Cherokee County on August 23, 1993.

Petitioner filed an application for post-conviction relief on September 5, 1996, and alleged the following grounds for relief:

> A.    ineffective assistance of counsel;

2

    B.   error in admission of evidence;

    C.   after discovered evidence.

(App. p. 558). Petitioner was represented by C. Tyrone Courtney, Esquire. The State made its return on December 5, 1996. (App. pp. 565-566). On May 29, 1999, the application was dismissed by the Honorable Donald W. Beatty as untimely under the state statute of limitations for post-conviction relief actions; however, on appeal, the parties agreed to a remand for a full evidentiary hearing. (January 28, 2000, Letter Order of the Supreme Court of South Carolina; August 29, 2003 Petition for Writ of Certiorari, p. 1). The appellate court issued the remittitur on February 16, 2000.

An evidentiary hearing was convened on July 23, 2001, at which time William Rhoden, Esquire, represented Petitioner. The Honorable Donald W. Beatty presided. PCR counsel defined the issues to be presented as follows:

    1.   Ineffective Assistance of Counsel;

    2.   Ineffective Assistance of Appellate Counsel.

(App. p. 570, lines 10-15).

At the conclusion of the hearing, Judge Beatty took the case under advisement. (App. p. 628, lines 4-7). On October 11, 2001, Judge Beatty ordered a new evidentiary hearing as the "Formal Order requested by the Court has not been received to date." (App. p. 823). A second evidentiary hearing was convened on July

3

31, 2002, at which the transcript from the first hearing was made

a part of the record and Petitioner was allowed to supplement the

record. (App. p. 634, line 3 - p. 639, line 5). Counsel noted

that Petitioner had filed several amendments to the PCR

application on his own and the PCR judge rejected those

amendments as a violation of state law prohibiting hybrid

representation. (App. p. 637, lines 4-13). On January 2, 2003,

Judge Beatty issued a written order of dismissal. (App. pp. 793-

715). The order defined the issues raised to, and ruled upon by

the PCR judge, as follows:

> 1. Allegation of ineffective assistance of trial
> counsel for the failure to procure the Applicant's
> former wife's tape recorded statement/failure to
> [...] request to be relieved so he could be a
> witness;
>
> 2. Allegation of ineffective assistance of
> counsel for the failure to address the Applicant's
> former wife ['s] recantation of her trial
> testimony;
>
> 3. Allegation of ineffective assistance of
> counsel for the failure to call witnesses to
> attack the credibility of the Applicant's former
> wife's drug abuse;
>
> 4. Allegation of ineffective assistance of
> counsel for the failure to object to the diagram
> being introduced;
>
> 5. Allegation of ineffective assistance of
> counsel for advising the Applicant not to testify;
>
> 6. Allegation of ineffective assistance of
> appellate counsel for the failure to raise
> certain issues.

(App. pp. 709-713)(See also App. p. 640, line 8 - p. 648, line 12).

Petitioner filed a timely notice of intent to appeal the denial of PCR. On June 10, 2003, Wanda H. Haile, Senior Assistant of the South Carolina Office of Appellate Defense, moved in the Supreme Court of South Carolina for an appointment of outside counsel since Petitioner had alleged a claim of ineffective assistance of appellate counsel against a former attorney for the Office of Appellant Defense. On June 26, 2003, the Supreme Court granted the motion and appointed William G. Rhoden, Esquire, as appellate counsel. Both counsel and Petitioner moved to have substitute counsel appointed, however, on August 6, 2003, the Court denied both motions. On August 29, 2003, Rhoden filed a Petition for Writ of Certiorari and raised the following issues:

> 1.    Trial Counsel was ineffective for failing to preserve the issue of premature jury deliberations;
>
> 2.    Trial counsel was ineffective for failure to preserve evidence and failing to offer himself as a witness;
>
> 3.    Trial counsel was ineffective for failing to call witnesses and produce evidence to refute the credibility of the state's key witness, Clarissa Whelchel;
>
> 4.    The Petitioner was denied effective assistance of appellate counsel.

(Cert. petition, pp. 8-11).

5

The State filed its return on October 8, 2003, and Petitioner filed a reply on October 17, 2003. The Supreme Court of South Carolina issued a summary order on May 13, 2004, which denied the petition and the Court issued the remittitur to Cherokee County on June 1, 2004.

The following documents have been made part of the record here:

1.    Appendix from Petitioner's PCR action (Vols. 1 and 2);

2.    State v. Wheichel, Memorandum Opinion No. 93-MO-247 (S.C.Sup.Ct. filed August 5, 1993);

3.    January 28, 2000, Letter Order of the Supreme Court of South Carolina granting a joint motion to remand for an evidentiary hearing;

4.    February 16, 2000, Remittitur Letter from the Supreme Court of South Carolina;

5.    June 10, 2003, Petition for Appointment of Outside Counsel;

6.    June 26, 2003, Order of the Supreme Court of South Carolina granting the motion to appoint outside counsel, and appointing William G. Rhoden, Esq.;

7.    July 28, 2003, Notice of Motion and Motion to be relieved of appointment, including an exhibit that shows a similar motion made by Petitioner;

8.    August 6, 2003, Order of the Supreme Court of South Carolina denying counsel and Petitioner's motion to relief counsel of appointment;

9.    August 29, 2003, Petition for Writ of Certiorari;

10.   October 8, 2003, Return to Petition for Writ of Certiorari;

11. October 17, 2003, Reply;

12. May 13, 2004, Letter Order of the South Carolina Supreme Court denying the Petition for Writ of Certiorari;

13. June 1, 2004, Remittitur Letter of the Supreme Court of South Carolina.

### **GROUNDS FOR RELIEF**

On April 28, 2005, Petitioner filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C § 2254, and raised the following challenges to his conviction:

A.   Ineffective Assistance of Counsel: Ineffective assistance for failing to subpoena and confront accuser, failure to object to improper prejudicial prosecutional [sic] remarks, failure to secure needed expert witnesses, conflict of interest, and failure to object to constructive amendment to the indictment;

B.   False Evidence:  The State's key witness, Clarissa Yvonne Whelchel, submitted false and prejudicial testimony under oath;

C.   After Discovered Evidence:  An affidavit received from State's witness Clarissa Yvonne Whelchel demonstrating that the prosecution improperly persuaded her into presenting lies in her testimony;

D.   Jury Allowed to Review Improperly Submitted Evidence:  Evidence entered for identification purposes only was improperly submitted to the jury for review;

E.   Denial of Right to Effective Appellate Counsel:  Appellate counsel failed to submit valid and meriterious [sic] issues to the court for review;

F.   Insufficient Evidence to Support the Armed Robbery Conviction:  No evidence of an armed robbery crime was produced at trial.

7

(Habeas petition, pp. 5-6, and supplemental page).

When this action was filed, Petitioner was proceeding pro se. Therefore on November 3, 2004, Petitioner was provided a copy of the summary judgment motion along with an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

On November 17, 2004, a Notice of Attorney Appearance was filed by H. Stanley Feldman, Esquire, on behalf of Petitioner. On December 1, 2004, Petitioner filed a motion for an extension of time to respond to the summary judgment motion, and on December 2, 2004, Petitioner was granted an extension of time until January 21, 2005. On January 18, 2005, Petitioner filed another motion for extension of time to respond to the summary judgment motion, and was granted an extension until March 7, 2005. Thereafter, on March 8, 2005, Petitioner filed a traverse, memorandum of law in opposition to motion for summary judgment, and request for an evidentiary hearing. On March 18, 2005, the respondents filed a reply to Petitioner's traverse and memorandum in opposition to the summary judgment.

A status conference was held in this matter on April 14, 2005, and the undersigned granted Petitioner's oral motion to stay the case for six (6) months so that petitioner could pursue

8

state court review of some of the issues presented in the instant

petition. After the six month deadline, a status conference was

held on October 14, 2005, at which time the court granted

Petitioner's oral motion to stay the action for another six (6)

months to obtain review of certain issues by the state. A status

conference was set for April 14, 2006.

Thereafter, on April 14, 2006, the stay was lifted on

consent of the parties. On June 21, 2006, an order was entered

giving Petitioner thirty (30) days to supplement the record and

inform the court of the outcome of any state review. However,

despite the order, nothing further has been filed in this action.

Hence, it appears consideration of the motion is appropriate.

### DISCUSSION

A review of the record and relevant case law reveals the

Petitioner is not entitled to habeas relief. Most of

Petitioner's claims are unexhausted and therefore procedurally

bypassed. His remaining exhausted claims do not entitle him to

habeas relief.

#### THE EXHAUSTION REQUIREMENT AND PROCEDURAL BYPASS

Applications for writs of habeas corpus are governed by 28

U.S.C. § 2254, which allows relief when a person "is in custody

in violation of the Constitution or laws or treaties of the

United States." The statute states in part:

> (b)(1) An application for a writ of habeas corpus
> on behalf of a person in custody pursuant to the

9

judgment of a State court, shall not be granted
unless it appears that–
    (A) the applicant has exhausted the remedies
available in the courts of the State; or
    (B)(i) there is either an absence of
available State corrective process; or
    (ii) circumstances exist that render such
process, ineffective to protect the rights of the
applicant.
    (2) An application for a writ of habeas corpus
may be denied on the merits, notwithstanding the
failure of the applicant to exhaust the remedies
available in the courts of the State.
    (3) A State shall not be deemed to have waived
the exhaustion requirement or be estopped from
reliance upon the requirement unless the State,
through counsel, expressly waives the requirement.
(c) An applicant shall not be deemed to have
exhausted the remedies available in the courts of
the State, within the meaning of this section, if
he has the right under the law of the State to
raise, by any available procedure, the question
presented.

This statute clearly requires that a petitioner pursue any

and all opportunities in the state courts before seeking relief

in the federal court.  When subsections (b) and (c) are read in

conjunction, it is clear that § 2254 requires a petitioner to

present any claim he has to the state courts before he can

proceed on the claim in this court.

The United States Supreme Court has consistently enforced

the exhaustion requirement.  The exhaustion doctrine existed long

before its codification by Congress in 1948.  In Ex parte Royall,

117 U.S. 241, 251 (1886), the Court wrote that as a matter of

comity, federal courts should not consider a claim in a habeas

corpus petition until after the state courts have had an

opportunity to act.  See, Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction.  The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal.  See, SCAR 207 and Blakeley v. Rabon, 266 S.C. 68,221 S.E.2d 767 (1976).  The second avenue of relief is by filing an application for post-conviction relief (PCR).  See, S.C.Code Ann. § 17-27-10 et seq.  A PCR applicant is also required to state all of his grounds for relief in his application.  See, S.C. Code Ann. § 17-27-90.  Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts.  A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S. C. Code Ann. § 17-27-45.

In short, when the petition for habeas relief is filed in the federal court, the court will review on the merits only those issues which were squarely presented to the South Carolina Supreme Court through direct appeal or through an application for a writ of certiorari from the denial of a PCR application.

Next, exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts.

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, specifically, direct appeal and appeal from PCR denial. The South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote ". . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly

12

after trial as the docket will allow, and while the attention of the appellate court is focused on his case." Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Further, since the requirement of exhaustion is not jurisdictional, a court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. See, Granberry v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); Clanton v. Muncy, 845 F.2d 1238 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1988).

Absent a showing of "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir.1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a

default.  <u>Murray v. Carrier</u>, 477 U.S. at 492.  To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions.  <u>United States v. Frady</u>, 456 U.S. 152 (1982).

Here, Petitioner raised only parts of Ground A, his ineffective assistance of counsel claim, in his petition for a writ of certiorari from the denial of PCR relief to the South Carolina Supreme Court.  Specifically, Petitioner's claim of "ineffective assistance for failure to secure needed expert witnesses" in the instant petition appears to be his third ground for relief in his petition for a writ of certiorari, "failing to call witnesses and produce evidence to refute the credibility of the state's key witness, Clarissa Whelchel."

Petitioner also raised Ground E here, his ineffective assistance of appellate counsel claim, in his petition for a writ of certiorari from the denial of PCR relief to the South Carolina Supreme Court.  Those claims are exhausted and may be reviewed here on the merits.

However, Petitioner did not exhaust the remaining claims presented in the instant petition and cannot raise them in a successive PCR in state court.  S. C. Code § 17-27-90 (1985); <u>Aice v. State</u>, 305 S.C. 448 (1991).  As such they are technically exhausted but procedurally bypassed.  Petitioner has not shown

14

cause for his default, <u>Coleman v. Thompson</u>, 501 U.S. at 750, or

that a "fundamental miscarriage of justice" has occurred, <u>Murray</u>

<u>v. Carrier</u>, 477 U.S. 478 (1986), so that these technically

exhausted claims are not available for review here.  The properly

exhausted claims will be reviewed in order.

<u>HABEAS STANDARD OF REVIEW</u>

The present habeas corpus petition was filed in June 2004.

Accordingly, the provisions of the Antiterrorism and Effective

Death Penalty Act ("AEDPA") apply to this case.  <u>Lindh v. Murphy</u>,

117 S.Ct. 2059 (1997).  Under the AEDPA, federal courts may not

grant habeas corpus relief unless the underlying state

adjudication:

> 1.  resulted in a decision that was contrary to,
> or involved an unreasonable application of clearly
> established federal law, as determined by the
> Supreme Court of the United States; or
>
> 2.  resulted in a decision that was based on an
> unreasonable application of the facts in light of
> the evidence presented at the state court
> proceeding.  28 U.S.C. § 2254 (d)(1)(2).

The first requirement has been explained by the United

States Supreme Court in <u>Williams v. Taylor</u>, 120 S.Ct. 1495

(2000)(plurality opinion).  Writing for a plurality of the Court,

Justice O'Connor held that,

> ... § 2254(d)(1) places a new constraint on the
> power of a federal habeas corpus court to grant a
> state habeas petitioner's application for a writ
> of habeas corpus with respect to claims
> adjudicated on the merits in state court.  Under §
> 2254(d)(1) the writ may issue only if one of the

> following two conditions is satisfied - the
> state-court adjudication resulted in a decision
> that (1) 'was contrary to. . . clearly
> established federal law as determined by the
> Supreme Court of the United States,' or (2)
> 'involved an unreasonable application of . . .
> clearly established Federal law as determined by
> the Supreme Court of the United States.'

Id. at 1523 (O'Connor, J., concurring in judgment).

With respect to the "unreasonable application" clause,

Justice O'Connor further explained that "a federal habeas court

may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or

incorrectly.  Rather, that application must also be

unreasonable."  Id. at 1522.

In sum, the AEDPA amendments exalt the role that a state

court's decision plays in a habeas decision by specifically

directing the federal court to make the state court decision the

starting point of federal review; only if that decision deviates

from the paradigm recited in § 2254(d) can a habeas court grant

relief.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In the case of Strickland v. Washington, 466 U.S. 668

(1984), the United States Supreme Court set forth two factors

that must be considered in evaluating claims of ineffective

assistance of counsel.  A petitioner must first show (1) that his

counsel committed error.  If an error can be shown, the court

16

must (2) consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 348 (4 Cir.1985), quoting Strickland. When the court considers this first prong, it must do so without falling into the trap of considering the actions only in hindsight. Whether counsel made an error is a question which can be answered only by viewing his actions or decisions in the light of all surrounding circumstances at the time the decision was made, not in the artificial light of all hindsight. Lockhart v. Fretwell, 506 U.S. 364 (1993). As the Court has repeatedly stated, ··· a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct ... the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Strickland, at 695.

When considering the second prong of the inquiry, however, a complaining defendant must show that he was prejudiced before

17

being entitled to reversal.  Prejudice may be considered in
hindsight.  The prohibition on the use of hindsight applies only
to the first prong of the Strickland review.  Lockhart, 506 U.S.
364.  Strickland requires that:  "[T]he defendant must show that
there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome."  Strickland,
at 694.

     In the instant action, to the extent Petitioner is
complaining that trial counsel failed to call expert witnesses to
testify that his wife's testimony against him was unreliable
because of her drug use and failed to call an expert to testify
about his injuries, the PCR judge applied Strickland, and found
no constitutional error.

     At the 2002 PCR hearing, former defense counsel was asked
about two possible expert witnesses, a medical expert to testify
about Petitioner's wife's Xanax use, and another medical expert
to describe Petitioner's purported injuries.  First, counsel
testified that he was aware that Clarissa Whelchel, Petitioner's
wife and co-defendant, had undergone a mental evaluation.  She
was present at the murder, and was also charged.  (App. pp.
326-331; pp. 348-350).  Her court ordered evaluation showed that
she could not conform her actions to what was legally expected

18

due to her taking large amounts of Xanax at the time of the crime.  Counsel testified that he was aware that the evaluating doctor was at trial, but counsel opted not to call him as a defense witness.  Counsel testified that he had presented evidence of the effects of Xanax abuse through Dr. Sexton, a state's witness.  (App. p. 663, lines 3-23; pp. 813-815).  Counsel testified similarly in the 2001 hearing. (App. pp. 588-589).  He also testified that he was very careful to reserve the last argument as a strategic move in representation, which may only be done by not offering defense evidence.  (App. p. 597).  See, State v. Mouzon, 326 S.C. 199, 203, 485 S.E.2d 918, 921 (1997)("In a criminal prosecution, where a defendant introduces no testimony, he is entitled to the final closing argument to the jury.").  Petitioner presented no evidence of what testimony the expert would have given at trial.

Second, counsel also testified at the 2002 hearing that he recalled Petitioner telling him he had an injury to his head, and had seen someone at a local hospital about the injury.  He agreed that testimony on the injury could be pertinent for a self-defense claim.  (App. p. 664, line 1 - p. 665, line 2).  However, at PCR Petitioner did not call any medical personnel witnesses to describe the injury, nor did he introduce any medical evidence.

19

The PCR judge accepted counsel's reasoning that the information on Xanax abuse was adequately covered by Dr. Sexton and the information was before the jury. (App. pp. 435-438). He found that counsel's decision not to call the doctor who assessed legal culpability in order to preserve the last argument was strategically sound, and not an error. (App. p. 711). The PCR judge did not specifically address the purported head injury information, but found that "Applicant also failed to carry his burden of proof to show a reasonable probability that the outcome of the trial would have been different" but for the alleged errors. (App. p. 711).

Based upon this record, the PCR judge's factual determinations were amply supported. Additionally, Petitioner has presented no "clear and convincing evidence" to the contrary. Therefore, the state court judge's findings should be presumed correct. 28 U.S.C. § 2254 (e)(1)

In sum, Petitioner has failed to show the PCR judge unreasonably applied <u>Strickland</u>, or unreasonably determined the facts that support his conclusion. Petitioner is not entitled to habeas relief.

Petitioner also exhausted his Ground E: "Denial of Right to Effective Appellate Counsel- Appellate counsel failed to submit valid and meriterious [sic] issues to the court for review." This ground was presented to the South Carolina Supreme court as

20

Ground 4 in the petition for a writ of certiorari from denial of PCR after it had been presented to the PCR court, along with other alleged appellate grounds which were not presented to the South Carolina Supreme Court. In both cases, Petitioner alleged that his appellate attorney should have claimed that there was insufficient evidence presented at trial to support the armed robbery conviction, specifically the money allegedly stolen was not produced at trial.

This issue was presented to the trial judge in a motion for a directed verdict which was denied[1] and was therefore available as a direct appeal ground. (See, App. pp. 468-472). Appellate counsel raised a single issue on appeal: "Whether the solicitor's use of peremptory challenges violated the equal protection clause and Batson v. Kentucky?"

The PCR court relied upon Strickland v. Washington and assessed the facts presented. It found that counsel had a professional duty to chose among potential issues according to their merit, Jones v. Barnes, 463 U.S. 745 (1983), and that appellate counsel's testimony that she made a strategic decision

---

[1] The trial transcript contains the following: The petitioner admitted that after shooting the victim, he picked up the money in question from the ground where the victim fell and took it with him. The money was put in his son's diaper bag and Petitioner took the money and the gun to Johnny Owen's house. Later at Johnny Owen's house, Petitioner's wife gave the money and the gun to the police. (App. p. 241, p. 296, pp. 316-317; pp. 326-334, p. 393).

to exclude certain issues was credible and was based on reasonable professional judgment. The court noted that failure to appeal all trial errors is not ineffective assistance of counsel, Griffin v. Aiken, 775 F.2d 1226 (4th Cir. 1985), and that there exists no duty to raise every non-frivolous issue presented by the record. The PCR judge further found that Petitioner had failed to carry his burden to show prejudice from the alleged deficient representation as required by Strickland.

On the record here, it cannot be said that the South Carolina court's adjudication of this ground resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding or resulted in a decision that was contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law. The petitioner is not entitled to habeas relief. 28 U.S.C. § 2254(d)(1)(2).

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the respondents' motion for summary judgment be granted and this matter ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
August 25, 2006

22

<u>Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"</u>
<u>&</u>
The **Serious Consequences** of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period, <u>but not thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* <u>Keeler v. Pea</u>, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and <u>Oliverson v. West Valley City</u>, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In <u>Howard</u>, <u>supra</u>, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* <u>Branch v. Martin</u>, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* <u>Wright v. Collins</u>, *supra*; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
